## Hughes *against* Boyer.

If one hire a carriage and horses to go a journey, and the owner send his own driver, and the horses are injured by immoderate driving, the person who hired them is not liable to the owner for damages.

In such case, the hirer incurs no responsibility for any injury happening to the carriage or horses, unless such injury have occurred from some act or interference of his. A driver sent by the owner is his servant, and unless the hirer causes the driver to go beyond the contract of hiring, he will not be liable for the acts of the driver occasioning injury to the carriage or horses.

*Quere,* whether he be liable for injuries done to third persons, by the act of the driver?

Where questions of law are proposed to the court on a view of facts different from those proved on the trial, or on some point not applicable to the case trying, it is the duty of the court to place the matter in its true point of view before the jury, and to tell them what the law is in the case before them.

It is competent to a jury to find matters of fact, without direct or positive evidence of those facts, and upon circumstantial evidence only, though the inference to be drawn from the circumstances proved, be not absolutely certain or necessary; and it belongs to the jury to draw the inferences from the facts proved.

ERROR to the common pleas of *Dauphin* county.

Ebenezer P. Hughes and Jonathan Chandler against William Boyer. This was an action on the case for immoderately driving the plaintiff's hired horses, by reason of which one of them died, in which the plaintiffs thus charged the defendant:

"William Boyer was summoned to answer Ebenezer P. Hughes and Jonathan Chandler, trading under the firm of Hughes & Chandler, of a plea of trespass on the case. For that whereas the said Hughes & Chandler, on the 'nineteenth' day of July, in the year of our Lord one thousand eight hundred and thirty-eight, to wit, at the town of Harrisburg, in the county of Dauphin aforesaid, at the special instance and request of the said William Boyer, let to hire, and delivered to the said William Boyer, a certain carriage and pair of horses of the said Hughes & Chandler, to be used by and to carry the said William Boyer a certain journey, to wit, from the town of Harrisburg, in the county aforesaid, to the town of York, in the county of York, and back again to the said borough of Harrisburg, for a certain hire or reward, to be therefor paid by the said William Boyer to the said Hughes & Chandler, for the use and hire of the said pair of horses and carriage; and although the said William Boyer then and there had and received the said pair of horses and carriage of them, the said Hughes & Chandler, to travel, go, and perform the said journey as aforesaid, yet the said William Boyer, contriving and intending to injure the said

[Hughes v. Boyer.]

Hughes & Chandler in this behalf, he, the said William Boyer, afterwards, to wit, on the same day and year last aforesaid, did wrongfully and injuriously drive on and go and travel with the said horses and carriage from the town of Harrisburg, in the county aforesaid, to the town of York, in the county of York, and from thence back to the town of Harrisburg aforesaid, in the same day, being much further, to wit, twenty-five miles further than he ought to have driven or travelled with the said pair of horses and carriage in the same day, and did then and there, to wit, on the day and year last aforesaid, so grievously and immoderately, unreasonably, inordinately and excessively, drive, work, and labour the said pair of horses, and use the said pair of horses in such an immoderate and unreasonable manner, and then and there took so little care of the said pair of horses, being of a large value, to wit, of the value of five hundred dollars, and by means of the driving them so much further in the same day than the journey for which the said Hughes & Chandler let to hire to the said William Bowyer the said pair of horses and carriage; and also, by means of the aforesaid bad usage, and of the grievous, immoderate, and unreasonable working of the said pair of horses in the manner and form aforesaid, one of them became and was very much hurt and injured, so that he died, to the damage of the said Hughes & Chandler, in the sum of two hundred and seventy-five dollars, and therefore they bring this suit."

The substance of the very voluminous testimony of witnesses was, that the defendant hired the carriage and horses and driver of the plaintiff, to take himself and three others from Harrisburg to York; when they arrived there, the defendant and one of the persons went on to Baltimore by another conveyance, and Mr Brady, who was one of the company, directed the driver that he must return to Harrisburg that night. The driver remonstrated, and said that the plaintiff had directed him to remain all night in York, and return the next day, but Mr Brady insisted upon returning; the weather was very warm, the horses were oppressed, and one of them died. Mr Brady was examined as a witness, and said that when they were about to leave Harrisburg, Mr Hughes said that the carriage and horses were not to return that night, and that he replied, if that were the case he would not go, as he must be at home that night, after which they started.

Plaintiffs' points.

The court were requested to charge the jury on the following points, to wit:

1. That if defendant hired of plaintiffs the horses and carriage referred to in the testimony, and received them under such hiring, and if the death of one of the horses was occasioned by the immoderate and unreasonable usage of them by the defendant or his guests, the plaintiff is entitled to recover in this suit.

2. If defendant was the hirer of said horses and carriage, and

[Hughes v. Boyer.]

did not use or cause to be used, that degree of diligence and care in using them, which all prudent men would use in keeping their own goods of the same kind under like circumstances, for want of which one of said horses came to his death, the plaintiff is entitled to recover in this suit.

3. If defendant was the hirer of said horses and carriage he thereby, and by the delivery to him under such hiring became responsible for the reasonable and prudent usage of them during the time he might have them in use, and until the hiring should be determined by returning them to the plaintiffs; and whether injury resulted to them for want of such reasonable and prudent usage whilst they were in the immediate and actual possession and pre ˑ sence of defendant or *his* guest, servant, or bailee, does not alter or take away defendant's liability to pay for such injury.

4. If defendant was the hirer of said horses and carriage, he is responsible for any injury and damage that happened to them. or any of them in his own, or his guests, or his bailee's hands, by imprudent, unreasonable, and immoderate usage, which it was in his or their power to avoid.

5. That where a carriage and horses are hired and delivered for use as in this case, and a driver sent therewith by the livery man, the hirer, that is the bailee, has the control of the same *absolutely*, to the extent of the object and purposes, time and journey for which the hiring was made, and is in no way subject to the opposition, direction or control of the driver; the driver is the hirer's servant *pro hac vice* and *bound* to obey his requests and commands pertaining to the purposes and intent of the hiring, and the ˑ *hirer* takes the *risk* of requiring such performances from the driver in the line of his duty, as may or may not result in injury to the thing hired.

6. If defendant hired the carriage and horses, and as an inducement for Mr Brady to go along, agreed that they should return the same day; if you believe that under the state of the weather, and the circumstance of a hilly road and heavy load, the drive was unreasonable, immoderate and imprudent, and occasioned the death of plaintiffs' horse, he is liable to pay the damages sustained, although he himself did not return with them from York; and this whether there was any positive prohibition against the return the same day or not.

7. If defendant hired the horses and carriage and used them himself, or permitted his guest to use them, differently from his agreement with the livery men, he is liable to the plaintiffs in damages in this suit; at all events for injury and damage happening to them in consequence of such departure from the agreement.

8. If defendant hired as aforesaid, and used or permitted the horses and carriage to be used differently from the agreement he is liable for the damages at all events, and any inquiry into the cause of said damage is immaterial.

[Hughes v. Boyer.]

9. It was the duty of the defendant or his guest to refrain from further using the horse after discovering that he was exhausted and refused his feed, and if such discovery was made in this case, and defendant or his guest continued after it, to use the horses, defendant is answerable for the damages which resulted.

10. If the jury shall be of opinion as the law has been laid down to them, that the facts of the case entitled plaintiffs to recover, they will be entitled to such damages as will compensate them for the value of the horse at the time of the injury, and for such loss, inconvenience, and damage, as such injury has occasioned them.

The court charged the Jury in substance as follows:

" It appears that the plaintiffs have sustained a loss and a serious one, and the question is whether the defendant occasioned that loss by overdriving the horse, or ordering or causing him to be overdriven. As to the amount of the load placed in or on the carriage, the evidence shows that Mr Hughes was present when they started, and made no objections. If so, there is nothing in this objection, except perhaps, what may apply to the speed with which they should travel. They left Harrisburg about 8 o'clock A. M., and arrived at York about 1, being about five hours on the road. They remained at York until about 5 o'clock P. M., when they started back for Harrisburg, and arrived at about 3 o'clock in the morning. The distance is stated to be about 25 miles. They therefore travelled in going, at the rate of about five miles per hour, and in returning, about two and a half miles per hour."

" The business of livery stable keeping is one in which the proprietors are often subject to great losses from *sickness* or accidents in their horses, as well as other casualties. They ought and probably do, charge for such contingencies in hiring, and we all, who are in the habit of using horses, know how often, especially in warm weather, horses become injured in travelling, even in the hands of the most careful persons.

"The plaintiffs allege that the contract was, that the carriage and horses should not return that night. On this subject the evidence is not clear with the plaintiffs. Mr Hughes did say that they should not return that night; Mr Brady on the other hand says, that he said he would not go if that was the case, and that they then went without objection, or without any thing more being said at the time of starting. If Mr Hughes had determined, as the evidence would indicate, that they should not return that night, and if before starting Mr Brady said he could not go unless they did return that night, and Mr Hughes when he so said made no reply, in consequence of which, Mr Brady went along with the company, the jury may infer that Mr Hughes waived his objection, or at least his prohibition of returning, if circumstances rendered it advisable so to do. But even if the parties understood they were to return that night, still the horses were to be driven reasonably and not immoderately.

" Then you will first inquire when the horse was injured; was it in going to or from York? In looking over the evidence we do not discover any act of Mr Boyer, which would show any interference with or hurrying of the driver, in going from Harrisburg to York. If you think so, and you should be of opinion that the horse was injured in that part of the journey, the defendant would not be liable.

" If the horse was diseased when they started from Harrisburg, and the driving to York, at a moderate gait, developed the disease and he died in consequence, inasmuch as the driving was by the plaintiffs' servant, they would be entitled to no damages.

" If the injury was not done in the journey to York, you will next inquire if it was done on the return home, and if the death of the horse ensued from being overdriven on his return from York to Harrisburg, taking into consideration that the day was a very warm one—that the horses did not eat well at York—that the return was at night at a very slow gait—that the horse showed symptoms of being fagged down, very shortly after they started from York, it strikes us that the preponderance of the evidence is, that the injury was not done on the return trip, but on the journey to York. But of this of course you will judge for yourselves.

" If the injury was done on the return from York, you will inquire and ascertain from the evidence whether Boyer the defendant, knew that Brady was going home that night. If he directed the driver to go home with Mr Brady that night, and that part of the drive killed the horse, the defendant will be liable, if such return was contrary to the contract of hiring. If it was even contrary to the contract of hiring, yet if the driver returned of his own accord, without the direction or order of Mr Boyer, rather than let Mr Brady return in the stage, Mr Boyer would not be answerable for any damages that ensued.

" We have had ten points given to us to charge you upon. This is a greater number than there usually are good points about a horse.

" The 1st, 2d, 3d and 4th points propounded by the plaintiff are conceded. The defendant will be liable for any loss or injury sustained by his own acts, or by the acts of any other person or persons who acted by his order, direction or permission.

" The 5th point may be considered as the law according to the limitations and provisions therein contained. Where a driver is sent with a carriage and horses hired, the person hiring is not answerable for any damages suffered by the horses, unless such injury was occasioned by the hirer's interfering with the driver so as to occasion the injury. The driver is the servant of the owner who sent him along, and unless the hirer requires and occasions the driver to drive or go beyond the contract of hiring, he will not be answerable for the acts of the driver in regard to any injury sustained by the horses of the owner.

[Hughes v. Boyer.]

" The 6th and 7th points are correct law.

" The 8th point is correct as to the first branches, so far as the damages may have resulted from such different use, and hence an inquiry into the causes of such damage is material.

" The 9th and 10th points are decided to be correct law.

" In regard to the acts of Mr Brady, however, you must not make Mr Boyer answer for them, unless they were done by the permission or the knowledge of Mr Boyer. If he, (Brady,) did acts which resulted in injury to plaintiffs' horse, in opposition to the wishes and directions of Mr Boyer, he (Brady) and not Boyer would be answerable.

" As to the matter of value or damages, if you should find for the plaintiffs, you have heard the evidence as to the value of the horse. Whatever you estimate that value to be, with interest and such sum as will compensate the plaintiffs for being obliged to seek redress at law, should constitute the amount of your verdict, if it be rendered for plaintiffs.

" It is a loss, to whoever loses, without the prospect of any benefit. You must adopt the rule of law, which is the rule of reason upon the subject—that is as to who ought to bear the loss.— Let it fall on him who occasioned it. - If the defendant is liable, he is bound to reimburse the plaintiffs for the injury they have sustained."

Errors assigned.

The court erred in the general charge to the jury in these particulars.

1. In confining the question trying to the mere fact of whether the defendant occasioned the loss by overdriving the horse *himself* or by *ordering* or *causing him* to be overdriven.

2. In that part wherein it is said, " if before starting, Mr Brady said he could not go unless they did return that night, and Mr Hughes, when he so said, made no reply, in consequence of which Mr Brady went along with the company, the jury may infer that Mr Hughes waived his objection, or at least his prohibition against returning."

3. In that point wherein it is said, " then you will first inquire when the horse was injured; was it in going to or returning from York? In looking over the evidence, we do not discover any act of Mr Boyer which would show any interference with or hurrying of the driver in going from Harrisburg to York. If you think so, and you should be of opinion that the horse was injured on that part of the journey, the defendant should not be liable."

4. In submitting a question or stating a condition to be decided by the jury, in relation to whether or not the horse was diseased when they started from Harrisburg, about which there was no evidence whatever.

5. In stating " it strikes us that the preponderance of the evidence is that the injury was not done on the return trip, but on the

IX.—2 X

[Hughes v. Boyer.]

journey to York," taken in connection with what is before said on this part of the case.

6. In stating, "if he directed the driver to go home with Mr Brady that night, and that part of the drive killed the horse the defendant will be liable, *if such return was contrary to the contract of hiring*. If it was even contrary to the contract of hiring, yet if the driver returned of his own accord, *without the direction or order of Mr Boyer* rather than let Mr Brady return in the stage, Mr Boyer would not be answerable for any damages that ensued."

7. The court erred in their answer to the plaintiff's 5th and 8th points.

8. In the concluding part of the general charge after the points had been answered.

9. The charge and answers to points are vague, equivocal, and contradictory.

*Briggs* and *Rawn*, for plaintiff in error, cited 8 *Watts* 304; 6 *Watts* 72–487; 2 *Watts* 165; 5 *Watts* 183; 4 *Esp.* 229; 5 *Com. Law Rep.* 437; 12 *Ibid.* 311; 1 *Bos. & Pul.* 407; *Story on Bailm.* 272; 2 *Stark.* 210; 9 *Johns.* 294; 11 *Serg. & Rawle* 319.

*M'Cormick, contra,* cited *Jones on Bailm.* 88; 2 *Stra.* 609; *Chit. Con.* 148; 1 *Chit. Pl.* 68; 5 *Esp.* 35–263; 2 *Kent's Com.* 586.

The opinion of the court was delivered by

HUSTON, J.—This case brings into consideration a point or points on which not much is to be found in the books. There are many cases in which the person who hired a horse rode or drove him, and his duty and responsibility have been discussed, and though some discrepancy is to be found, yet perhaps it may be said to be settled, to what extent, and under what circumstances, the hirer is liable.

In this case, ten points are submitted to the judge, on which he is requested to charge the jury. It will be seen that almost all of them apply to cases in which he who hired a horse drove him, or employed or intrusted some person to drive.

There is a difference, in reason and in law, arising from the circumstances of each case. If a horse is hired to me, and I am to ride or drive him, I am to judge of what distance he can travel in a given time, and to see that he is not overheated or too much fatigued. But if, as often happens, the owner himself goes along and drives, I have no care of the horse, and no responsibility if he is injured. But if the owner sends a driver, who is to drive, and water and feed the horses, it is as to me the same as if the owner himself drove. If his driver oversets and breaks my arm, his master is liable to me; and if, at the same time, the carriage is broken, I am not liable to the owner: it was not done by me, but by him-

self or his servant. But a horse may be hurt at the same time—— I am not liable for that; it was the result of the carelessness or unskilfulness of the owner or his servant. And wherever the owner sends a servant to drive and take care of the horses, he who is carried has no responsibility, unless the injury occurred from some act or interference of his. In *Jones on Bailment* 123, edit. of 1796—p. 88, edit. of 1804, under the fifth class of bailment, viz. "Hiring," we find, "If Caius hire a horse, he is bound to ride it as moderately, and treat it as carefully, as any person of common discretion would ride and treat his own horse; and if through his negligence, &c., &c. If, indeed, he hire a carriage and any number of horses, and the owner send with them his postilion or coachman, Caius is discharged from all attention to the horses, and remains obliged only to take ordinary care not to injure the glasses and inside of the carriage while he sits in it."

The above is common sense and sound law, and if we do not find this doctrine more often repeated, it is because, on the authority of this writer and on reason, nobody has supposed the person who hired the horses and the driver would be considered answerable where the owner would not and did not trust him, but sent his own servant.

A class of cases was cited, in which the dispute was, if a carriage driven by the owner's servant, is hired by Caius, and while he is in it an injury is done to a third person, by carelessness or otherwise, whether Caius or the owner of the carriage, whose servant drove it, is answerable to this injured person. The cases are contradictory, and of course some of them wrong, but as they do not apply to this case, I need not decide.

It was stated by the counsel on both sides, that not half the testimony given in the cause is brought up, or on our paperbook. This is the fault of the counsel, or of one of them. If all the evidence was here, we would not be at a loss to know how most of the questions proposed to the court were intended to be applied to this case.

The only doubt about this case arises from two passages, in which the name of Mr Brady is used. First, before the carriage started, Brady, who had been invited to go along, said, in the presence and hearing of Hughes, one of the owners, that unless the carriage came back that night, he would not go, and Hughes saw him get in and said nothing; it was properly left to the jury to decide whether this was not an assent by Hughes that it should return that night.

The next is, it would seem that Brady offered to return in the stage, and leave the driver and carriage. Before this Boyer, the defendant, had gone on to Baltimore. If, upon this offer of Brady, says the judge, the driver of his own accord returned, Boyer was not liable. There was no error in this; the owner had put the driver in his stead, to act for him, and Boyer was not liable for a

[Hughes v. Boyer.]

matter done in his absence, and not with his knowledge nor by his direction.

· As to every one of the points, it may be observed, the court answered most of them as requested, but intimated that they were not applicable to the case trying; they related to a case in which he who hired a horse rode or drove him. The fifth puts the case of a driver sent, but so specially, that the court, without denying it, stated the law as applicable to this case. " Where a driver is sent with a carriage and horses hired, the person hiring is not answerable for any damages suffered by the horses, unless such injury was occasioned by the hirer interfering with the driver, so as to occasion the injury. The driver is the servant of the owner, who sent him along, and unless the hirer requires and occasions the driver to go beyond the contract of hiring, he will not be answerable for the acts of the driver in regard to any injury sustained by the horses of the owner."

This is the law, as cited and stated above. We have had occasion too often to remark that points are proposed to the court on a supposition that the facts are different from those proved in the cause, or to get an opinion on some point of law not exactly the same with that applicable to the case trying. This may mislead the jury, and it is the duty of the court to put the matter in its true point of view, and tell the jury what the law is in the case before them. One other error is alleged: the court stated that horses sickened and died under the care of the most careful persons, and those persons the owners: and if, travelling at a moderate gait, the disease was developed, and the horse died of some previous disorder, the defendant was not liable. There was no error in this; if one, and that the best of the horses, sickens and dies in a journey, the fair inference is, that he was diseased before; any man would say so if using his own horses himself, in his own business. May not a jury say so in judging between other people? The king's bench, in England, and afterwards the court in the last resort, have decided " that it is competent to a jury to find matters of fact, without direct or positive testimony of those facts, and upon circumstantial evidence only, though the inference or conclusion to be drawn from the circumstances proved, be not absolutely certain or necessary; and that it belongs to the jury to draw the inferences from the facts proved." *Mansel on Demurrer* 309.

This is all which it is necessary to notice in deciding on this case.

Judgment affirmed.